IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BREANA DAUGHERTY, on behalf of
herself, all others similarly situated, and the
general public,

    Plaintiff,

  v.

SOLARCITY CORPORATION, a Delaware
corporation, and DOES 1–50, inclusive,

    Defendant.
_____/

No. C 16-05155 WHA

**ORDER DENYING
MOTION TO COMPEL
ARBITRATION OR STAY AND
GRANTING IN PART AND
DENYING IN PART MOTION
TO DISMISS**

## INTRODUCTION

In this wage-and-hour putative class action, defendant moves to dismiss and separately moves to compel arbitration or stay. For the reasons stated below, the motion to compel arbitration or stay is **DENIED**. The motion to dismiss is **GRANTED IN PART AND DENIED IN PART**.

## STATEMENT

Plaintiff Breana Daugherty worked in sales for defendant SolarCity Corporation from June 2015 to October 2015 with the title "Inside Energy Specialist." She worked approximately fifty hours per week (Amd. Compl. ¶¶ 3, 8).

In June 2016, SolarCity brought an action against Daugherty in federal court in the Eastern District of California, seeking to enforce a class-action waiver that she signed upon joining the company and to compel arbitration of claims SolarCity learned Daugherty planned to file. Daugherty brought a special motion to strike under California's Anti-SLAPP law in August 2016.

Daugherty commenced this putative class action in federal court here in San Francisco in September 2016 asserting seven state-law claims all relating to SolarCity's alleged failure to provide meal periods and rest breaks as required under California law and failure to pay premium wages for hours worked without such meal periods or rest breaks. SolarCity then voluntarily dismissed its declaratory judgment action.

SolarCity then moved to dismiss Daugherty's complaint, contending that federal subject-matter jurisdiction under the Class Action Fairness Act was lacking, inasmuch as Daugherty had failed to allege her citizenship or that of any putative class member. In lieu of responding to that motion, Daugherty filed an amended complaint, adding a claim for failure to pay for all hours worked under the federal Fair Labor Standards Act and a claim for declaratory judgment that an individual arbitration agreement that she signed as a condition of employment is unlawful and invalid.

After Daugherty amended her complaint, SolarCity withdrew its motion to dismiss Daugherty's original complaint and now moves to dismiss her amended complaint. SolarCity also moves to compel arbitration of Daugherty's individual claims. Alternatively, SolarCity moves to stay the action pending the Supreme Court's decision in *Morris v. Ernst & Young, LLP*, 834 F.3d 975 (9th Cir. 2016), *cert. granted*, (U.S. Jan. 13, 2017). This order follows full briefing and oral argument.

**ANALYSIS**

This order first addresses SolarCity's motion to compel arbitration and its related request to stay the action. It then addresses SolarCity's motion to dismiss.

2

**1.     MOTION TO COMPEL ARBITRATION OR STAY.**

All agree that prior to starting work for SolarCity, Daugherty executed an "At-Will Employment, Confidential Information, Invention Assignment, and Arbitration Agreement" (Reed Decl., Exh. C). Section 12 of the agreement set forth the terms of the arbitration agreement. The prefatory language of that paragraph read as follows (*id.* § 12):

> In consideration of my employment with the Company, its promise to arbitrate all disputes with me, and my receipt of compensation and benefits provided to me by the Company, at present and in the future, the Company and I agree to arbitrate any disputes between us that might otherwise be resolved in a court of law, and agree that all such disputes only be resolved by an arbitrator through final and binding arbitration, and not by way of court or jury trial, except as otherwise provided herein or to the extent prohibited by applicable law. I acknowledge that this Agreement is governed by the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, and evidences a transaction involving commerce.

Sub-section A set forth the scope of the arbitration agreement, and Paragraph 1 thereof provided that the arbitration agreement would apply to disputes regarding, *inter alia*, "meal and rest periods" and "Fair Labor Standards Act." All agree that Daugherty's claims fall within the scope as defined in Paragraph 12(A)(1).

Paragraph 2 included a class-action waiver, as follows (*id.* § 12(A)(2)):

> By signing below, I expressly agree to waive any right to pursue or participate in any dispute on behalf of, or as part of, any class, collective, or representative action, except to the extent such waiver is expressly prohibited by law. Accordingly, no dispute by the parties hereto shall be brought, heard or arbitrated as a class, collective, representative, or private attorney general action, and no party hereto shall serve as a member of any purported class, collective, representative, or private attorney general proceeding, including without limitation pending but not certified class actions (**"Class Action Waiver"**). I understand and acknowledge that this Agreement affects my ability to participate in class, collective, or representative actions.

Paragraph 3 provided that disputes regarding the validity or enforceability of the class-action waiver above could only be resolved "by a civil court of competent jurisdiction and not by an arbitrator." That paragraph then addressed the severability of the class-action waiver, as follows, in pertinent part (*id.* § 12(A)(3)):

> In any case in which (a) a party files a dispute as a class, collective, representative, or private attorney general action, and (b) a civil court of competent jurisdiction finds all or part of the

3

> Class Action Waiver invalid or unenforceable, then such elements of the dispute for which the court determined that the Class Action Waiver was unenforceable shall be permitted to proceed in a court of competent jurisdiction, but any remaining portion of the dispute must still be resolved in arbitration, including any individual claims or grievances (and in no event shall an arbitrator have authority to arbitrate any class, collective, representative, or private attorney general action). To the extent any court allows the pursuit of a representative action or private attorney general proceeding, notwithstanding the Class Action Waiver, then before I may proceed with such action in a court of law I agree that an arbitrator must determine, in accordance with the terms herein, whether, and to what extent, I am an aggrieved person for purposes of such an action, and I agree that I may only pursue individual remedies associated therewith through arbitration.

Section 12 included provisions prohibiting retaliation, preserving the availability of internal dispute-resolution procedures, and setting forth the procedure for prosecuting any arbitration. Daugherty does not challenge the enforceability of the arbitration agreement on procedural and substantive unconscionability grounds. Rather, her sole challenge to the arbitration agreement relates to the class-action waiver, which she contends violates Section 7 of the National Labor Relations Act, which guarantees employees the right "to engage in . . . concerted activities for the purpose of collective bargaining or other aid or protection." 29 U.S.C. 157.

In *National Licorice Co. v. NLRB*, the United States Supreme Court held that contracts requiring a waiver of rights guaranteed by the NLRA are unlawful. 309 U.S. 350, 364 (1940); *see also* 29 U.S.C. 158. In *Morris v. Ernst & Young, LLP*, our court of appeals held that the right to engage in concerted activity under the NLRA constituted a substantive right, so such waivers could not be enforced. 834 F.3d 975 (9th Cir. 2016), *cert. granted*, (U.S. Jan. 13, 2017). Specifically, it held, "the right to concerted employee activity cannot be waived in an arbitration agreement." *Id.* at 986.

SolarCity primarily argues "[w]ith all due respect, the *Morris* majority's holding was incorrect," and asks us to follow the dissent, which concluded the NLRA conferred only procedural rights (which could be displaced by the Federal Arbitration Act). As the undersigned stated in *Coppernoll v. Hamcor, Inc.*, "[i]t seems astonishing that any litigant might insist that the law as handed down by our court of appeals should be ignored — worse yet, even

4

violated." No. 16-05936, Dkt. No. 41 (N.D. Cal. Jan. 17, 2017). So too here. This order will not compel arbitration in contravention of binding law.

SolarCity argues that the arbitration agreement survives notwithstanding *Morris* inasmuch as it does not prevent Daugherty from using SolarCity's internal procedures, pursuing certain claims excluded from arbitration by statute, or pursuing administrative relief (Reed Decl., Exh. C, § 12(A)(5). It contends that carve-out preserved some fora in which employees could still pursue collective activities to some degree, namely, by pursuing "joint legal strategies, shared arguments and resources, hiring the same attorneys, or even requesting the Department of Labor to bring an independent action against the employer" (Def.'s Reply. on Mtn. to Compel Arbitration at 7, *quoting Morris*, 834 F.3d at 995 (Judge Sandra Ikuta, dissenting)). This position cannot be reconciled with the holding of *Morris* that "[i]t would equally violate the NLRA for [the defendant] to require its employees to sign a contract requiring the resolution of all work-related disputes in court and in 'separate proceedings.'" *Id.* at 985. The theoretical availability of some collective element of the proceedings is insufficient to overcome *Morris*.

SolarCity alternatively argues that we must compel Daugherty's claim under California's Private Attorney General Act to arbitration for the preliminary individual determination of whether or not she is an "aggrieved employee" who can maintain a representative PAGA claim. In *Iskanian v. CLS Transportation Los Angeles, LLC*, the California Supreme Court described an action under PAGA as "a type of *qui tam* action" in which the employee acts on behalf of the state, which was "fundamentally a law enforcement action designed to protect the public and not to benefit private parties." 59 Cal. 4th 348, 381 (2014), *cert. denied* (U.S. Jan. 20, 2015). Thus, *Iskanian* held that an employment agreement that compels a waiver of representative claims under PAGA "is contrary to public policy and unenforceable as a matter of state law." *Id.* at 384.

SolarCity contends that we must sever the individual determination of whether Daugherty is an "aggrieved employee" and send that to arbitration. Only if she is successful, it argues, can Daugherty pursue her PAGA claim in court. SolarCity coyly states "this Court may

5

1  find itself bound by wrongly decided decisions relying on *Iskanian* and its progeny," but it fails
2  to candidly reveal that the California Court of Appeal has expressly rejected this argument
3  (Def.'s Reply on Mtn. to Compel Arbitration at 2). In *Perez v. U–Haul Co. of California*, the
4  California Court of Appeal held: "California law prohibits the enforcement of an employment
5  agreement provision that requires an employee to individually arbitrate whether he or she
6  qualifies as an 'aggrieved employee' under PAGA, and then (if successful) to litigate the
7  remainder of the 'representative action in the superior court.'" 3 Cal. App. 5th 408, 421 (2016)
8  (citing *Williams v. Super. Ct.*, 237 Cal. App. 4th 642, 646 (2015)). Such a requirement, the
9  California Court of Appeal held, would render *Iskanian* "meaningless." *Williams*, 237 Cal.
10 App. 4th at 646. (Oddly, Daugherty also fails to identify this binding authority, even though
11 favorable to her position.) This order rejects SolarCity's invitation to disregard binding
12 interpretations of California law by California courts.
13    Notably, SolarCity has already lost a motion to compel arbitration based on nearly
14 identical terms and the very same arguments discussed herein. *See Whitworth v. SolarCity*
15 *Corp.*, No. 16-01540, 2016 WL 6778662, at *1 (N.D. Cal. Nov. 16, 2016) (Judge Jacqueline
16 Scott Corley). SolarCity's efforts to set aside binding precedent that invalidates the arbitration
17 agreements sought to be enforced are unpersuasive.[1]
18    This order now turns to SolarCity's request to stay the action pending the Supreme
19 Court's forthcoming review of *Morris*.
20    **2.    MOTION TO STAY.**
21    SolarCity alternatively asks that this case be stayed pending the Supreme Court's review
22 of *Morris*. The Supreme Court granted certiorari on January 13, 2017, after the briefs on this
23 motion had been filed but before oral argument occurred. A decision in *Morris* remains many
24 months, perhaps even more than a year away. Given the extent of that possible delay, a stay is

---

[1] SolarCity's PAGA argument has twice been rejected by the California Court of Appeal in unpublished (and therefore non-precedential) decisions. *See Wan v. SolarCity Corp.*, No. H042103, 2017 WL 25497 (Cal. App. 6th Dist. Jan. 3, 2017); *Irving v. SolarCity Corp.*, No. A143961, 2016 WL 6962259 (Cal. App. 1st Dist. Nov. 29, 2016), *reh'g denied* (Dec. 23, 2016).

1  not warranted, particularly because much of the discovery in this action would be useful both
2  here and in any eventual arbitration.
3       For the time being, however, discovery should concentrate on facts and circumstances
4  applicable to Daugherty and not veer off into discovery pertaining chiefly to class issues. That
5  being said, the mere fact that allowable discovery may bear somewhat on class issues should
6  *not* be a basis for refusing discovery. On the other hand, our plaintiff must not overreach and
7  seek discovery not chiefly related to her individual case.

    **3.    MOTION TO DISMISS.**

9       SolarCity separately moves to dismiss, arguing that Daugherty has failed to allege facts
10 with sufficient specificity to establish her various wage-and-hour claims. Each category of
11 claims is addressed in turn.[2]

    **A.    Overtime.**

13      Section 510(a) of the California Labor Code requires employers to pay non-exempt
14 employees "no less than one and one-half times the regular rate of pay for an employee" for
15 "any work in excess of 40 hours in any one workweek." The federal Fair Labor Standards Act
16 also provides for overtime wages of one-and-one-half times the regular rate of pay. 29 U.S.C.
17 207(a)(1). Daugherty alleges that she "typically worked approximately 50 hours a week" and
18 that she "received commissions from [SolarCity] which were not included in calculating [her]
19 regular rate of pay for the purposes of overtime pay" (Amd. Compl. ¶¶ 3, 57). Thus, Daugherty
20 claims SolarCity violated several provisions of the California Labor Code and the FLSA by
21 failing to properly pay overtime wages.
22      SolarCity contends that Daugherty's factual allegations are insufficient to state a claim
23 for unpaid overtime, citing *Landers v. Quality Communications, Inc.*, 771 F.3d 638 (9th Cir.
24 2014). In *Landers*, an employee contended he had not received proper minimum wage or
25 overtime payments. He alleged various inadequacies in his employer's overtime policies, but

---

[2] SolarCity also argues that Daugherty has not alleged sufficient facts to show that the *putative class* has been injured. That issue will be addressed at the Rule 23 stage, once both sides have had the opportunity to conduct discovery into the experiences of the putative class members and Daugherty's adequacy and typicality as a class representative. This order only addresses whether Daugherty has adequately alleged her individual claims.

7

"[n]otably absent from the allegations in [the plaintiff's] complaint . . . was any detail regarding a given workweek when [he] worked in excess of forty hours and was not paid overtime for that given workweek and/or was not paid minimum wages." *Id.* at 646. Our court of appeals held that while an employee need not allege "with mathematical precision" the amount of overtime compensation owed, he must provide "sufficient detail about the length and frequency of [his] unpaid work to support a reasonable inference that [he] worked more than forty hours in a given week." *Ibid.* (quoting *Nakahata v. New York-Presbyterian Healthcare System, Inc.*, 723 F.3d 192, 201 (2d Cir. 2013)). Because the employee in *Landers* simply alleged that he was not paid for overtime hours, without providing details about the overtime hours worked, his allegations merely "'raise[d] the possibility' of undercompensation," which was "not the same as plausibility." *Ibid.* (quoting *Nakahata*, 723 F.3d at 201).

Here, Daugherty alleged that she *typically* worked 50 hours a week and that SolarCity as a matter of policy or practice failed to count commissions and bonuses as part of her regular rate of pay. Thus, not only has Daugherty alleged that SolarCity failed to pay adequate overtime wages that she earned on "at least one workweek," as required by *Landers*, Daugherty's allegations support the inference that SolarCity *typically* failed to pay adequate overtime wages. Under *Landers*, that allegation is sufficient.

SolarCity cites *Perez v. Wells Fargo & Co.*, 75 F. Supp. 3d 1184 (N.D. Cal. 2014) (Judge Phyllis J. Hamilton). There, the plaintiffs were a group of multiple employees (unlike here), who alleged generally that "California plaintiffs were regularly and consistently required to work . . . more than 40 hours in any work week and were not compensated for such work at premium rates." *Id.* at 1189 (quoting complaint). The employees therein alleged no facts specific to any individual plaintiff or describing the circumstances pursuant to which they worked more than forty hours. *Perez* held that under *Landers*, allegations that collections of certain plaintiffs "'regularly' or 'regularly and consistently' worked more than 40 hours per week" could not survive a motion to dismiss. *Id.* at 1192.

*Perez* is distinguishable in two important ways. *First*, the allegations of Daugherty's complaint are not clouded with references to collections of plaintiffs without any specifics about

8

any individual plaintiff. Her complaint is about her circumstances only (apart from class allegations). Daugherty alleges that she herself typically worked a fifty hour week. That fact, if proven, would be sufficient to establish that Daugherty was entitled to overtime pay (assuming she also was non-exempt, which is not in dispute on this motion). By contrast, the allegations in *Perez*, even if proven, would still have needed *further* proof to support each individual plaintiff's entitlement to overtime. (That is, showing that a group regularly worked in excess of forty hours does not necessarily show that each member did.)

*Second*, Daugherty specifically alleges that her typical work week was *fifty* hours, offering greater specificity than the soft description of "more than 40 hours" in *Perez*. This difference matters inasmuch as time that is merely in excess of forty hours could be *de minimis* and non-compensable, unlike a full fifty-hour week. *Gillings v. Time Warner Cable LLC*, 583 Fed. Appx. 712, 714 (9th Cir. 2014) (citing *Gomez v. Lincare, Inc.*, 173 Cal. App. 4th 508, 527 (2009)).

SolarCity also cites *Schneider v. Space Sys./Loral Inc.*, No. 11-02489, 2012 WL 476495, at *5 (N.D. Cal. Feb. 14, 2012) (Judge Maxine Chesney). There, the employee failed to allege that "he actually worked overtime and was not paid," but instead offered conclusory allegations that *class members* worked uncompensated overtime hours. SolarCity quotes *Schneider* for rejecting as conclusory allegations that "[p]laintiff and class members consistently worked in excess of eight hours in a day, in excess of 12 hours in a day and/or in excess of 40 hours in a week," but that quote (and others like it) are actually excerpts from other decisions cited in *Schneider*. The citations in *Schneider* are inapposite for the same reasons as *Perez*.

SolarCity also cites *Byrd v. Masonite Corp.*, No. 16-035, 2016 WL 756523 (C.D. Cal. Feb. 25, 2016) (Judge Jesus G. Bernal), for the proposition that an allegation that an employer "failed to pay minimum wage to plaintiff and the other class members as required" could not survive a motion to dismiss under *Landers*. Specifically, *Byrd* held that because the employee had not alleged "facts demonstrating that there was at least one workweek in which" the employer failed to pay minimum wages, the employee failed to state a claim.

9

Here, Daugherty *has* alleged facts to support her overtime claim: she "typically" worked fifty hours, and SolarCity never included her commissions or bonuses in the calculation of her regular rate of pay. Those alleged facts are sufficient to support the inference not only that SolarCity failed to pay adequate overtime on at least one workweek, but that it *typically* failed to pay adequate overtime in the three months of Daugherty's employment. *Byrd* is off point.

SolarCity cites four more decisions in a footnote, each of which is distinguishable for the same reasons as *Byrd* (Def.'s Mtn. to Dismiss at 8 n.3).

This order acknowledges that Daugherty's factual allegations are bare, but they plausibly support the inference that SolarCity failed to pay Daugherty overtime when it was owed on at least one occasion. That is enough under *Landers*.

### B. Meal Periods and Rest Breaks.

Section 512 of the California Labor Code requires employers to provide non-exempt employees with an uninterrupted meal period of at least thirty minutes for each work period of five hours (and two meal periods for each period of ten hours). Section 12 of the Wage Order applicable to SolarCity requires employers to provide ten minutes of rest breaks for every four-hour work period. (Neither side identifies the specific wage order, but both agree that Section 12 includes this requirement.) For each workday on which an employer fails to provide such meal periods or rest breaks, Section 226.7 of the California Labor Code requires the employer to pay one hour of additional "premium" wages at the regular rate of pay.

Daugherty alleges that she "sometimes worked over ten (10) hours a day" (Amd. Compl. ¶ 27). She alleges that SolarCity maintained a policy or practice of failing to provide compliant meal periods or rest breaks as required. She alleges that SolarCity "failed to pay Plaintiff and [the putative sub-class members] additional premium wages, and/or were not paid [*sic*] premium wages at the employees' regular rates of pay when required meal periods were not required" (*id.* ¶ 29). She also alleges that SolarCity's "payment of premium wages when required rest periods were not provided serves as an admission that [it] did not provide rest breaks in accordance with the law" (*id.* ¶¶ 24–29).

10

SolarCity raises the same challenge to Daugherty's meal-period and rest-break claims that it did in response to her overtime claim, namely, that under *Landers*, she must allege that she suffered the alleged harm on at least one instance. Unlike her overtime claims, however, Daugherty's meal-period and rest-break allegations fall short.

The allegations in Daugherty's complaint addressing these claims are sloppy. She alleges she worked over ten hours a day, but she never alleges that the ten hours comprised work periods of four or five continuous hours, which would trigger SolarCity's obligation to provide meal-periods and rest-breaks (or pay premium wages for failing to do so).

Even assuming for the sake of argument that Daugherty had worked a five-hour continuous period, she failed to allege that she ever actually missed a meal period for the first five-hour period of a workday — only that SolarCity's policy and practice was not to provide one. (She does affirmatively state that she "never received second meal breaks," though she has still failed to allege she worked a second consecutive five-hour period.)

Moreover, Daugherty's description of SolarCity's premium-wage policy is vague and conclusory. She alleges that SolarCity "failed to pay [Daugherty and the putative class] additional premium wages, and/or were not paid premium wages at the employees' regular rates of pay when required meal periods were not provided" (*id.* ¶ 29). Unlike the allegations supporting her overtime claim, which described the precise reason SolarCity failed to pay adequate wages (failure to consider commissions and bonuses), the allegations supporting Daugherty's meal-period claim offer no factual basis for inferring SolarCity's purported error in calculating wages.[3]

As to her rest period claim, in addition to Daugherty's failure to allege that she ever worked a four-hour period, she *acknowledges* that SolarCity paid premium wages (*id.* ¶ 39). Nevertheless, she *fails* to allege that the wages paid were inadequate.

On these allegations, we can only guess at whether Daugherty ever worked a continuous period that would entitle her to a meal period or a rest break, whether she ever received the

---

[3] The grammatical errors in Daugherty's allegation about premium wages for missed meal-periods present yet another deficiency in the pleadings. As written, Paragraph 29 states both that SolarCity failed to pay premium wages, and that SolarCity *was not paid* premium wages at employees' regular rates.

11

required breaks, or whether she received proper overtime payments. This falls short of plausibility, as discussed in *Landers*.

These shortcomings are disturbing, coming from a lawyer and plaintiff who aspire to lead a class, an important fiduciary duty inconsistent with such lapses. Nevertheless, this order will allow Daugherty to seek leave to amend her meal-period and rest-break claims to more clearly set forth *factual allegations* (not mere conclusions) showing that she, herself, was (on at least one occasion) entitled to a meal period or rest break, did not receive them as a result of SolarCity's policies or practices, and received inadequate premium wages for those work periods.

### C. Wage Statements.

Section 226 of the California Labor Code requires employers to furnish wage statements, in connection with their paychecks, accurately showing certain data such as gross and net wages earned, and applicable piece rates. Daugherty contends that SolarCity violated Section 226 as a result of its inaccurate calculations of premium and overtime wages as discussed above. This claim is entirely derivative of her overtime, meal-period, and rest-break claims, and SolarCity's primary argument is that it must fail because those prior claims fail. As stated, Daugherty's overtime claim survives (and her meal-period and rest-break claims can easily be rescued with amendment), so SolarCity's motion to dismiss this claim as derivative of unsuccessful claims is misplaced.

SolarCity also contends that Daugherty has failed to allege an injury as a result of the alleged violations of Section 226 because she simply identifies inaccuracies without explaining how she was damaged. SolarCity relies on an abrogated standard for Section 226 violations. In 2013, the California Legislature amended Section 226 provide that an employee is deemed to suffer injury if an employer "fails to provide accurate and complete information as required by

[Section 226(a)] and the employee cannot promptly and easily determine from the wage statement alone" the information required to be conveyed. Cal. Labor Code § 226(e)(2).[4]

Daugherty's overtime claim sufficiently establishes that SolarCity failed to provide accurate and complete information about Daugherty's wages, in violation of Section 226, and if Daugherty successfully amends her meal-period and rest-break claims, those claims will also support this derivative claim. SolarCity's motion to dismiss Daugherty's wage-statement claim is **DENIED**.

### D. Waiting Time.

Section 203 of the California Labor Code provides that "[i]f an employer willfully fails to pay . . . any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced . . . ." Daugherty seeks to recover so-called waiting-time penalties for unpaid overtime and premium wages (to the extent she rescues her meal-period and rest-break claims) that SolarCity never paid even after her termination.

In addition to challenging this claim as derivative of prior claims, SolarCity contends that Daugherty has failed to allege facts showing that SolarCity was willful and that she has provided no factual details regarding her termination.

Under Section 203, an employer willfully fails to pay the wages when it "intentionally fails to pay wages to an employee when those wages are due," though a good faith dispute that such wages are due preclude the imposition of waiting-time penalties. 8 Cal. Code Regs. § 13520. Willfulness in this context "does not necessarily imply anything blamable, or any

---

[4] Rather than acknowledge its erroneous statement of the standard for pleading an injury under Section 226, as demonstrated by Daugherty, SolarCity cites *Johnson v. Serenity Transp., Inc.*, 141 F. Supp. 3d 974, 1004 (N.D. Cal. 2015) (Judge Jacqueline Scott Corley), in its reply as further support (Def.'s Reply on Motion to Dismiss at 7). *Johnson* post-dated the amendment to Section 226, but it applied the older standard when evaluating conduct that pre-dated the amendment. *Johnson* does not reflect the present state of the law. Daugherty's individual claims entirely post-date the amendment.

It is worth noting that Daugherty purports to represent a class for claims dating back to December 1, 2012, which predates the amendment (and her employment with SolarCity). That issue has not been teed up and is not properly resolved on a motion to dismiss, but it may become critical in evaluating Daugherty's typicality and adequacy as a representative.

13

malice or wrong . . . but merely that the thing done or omitted to be done was done or omitted intentionally." *Baker v. American Horticulture Suppl, Inc.*, 186 Cal. App. 4th 1059 (2010).

Daugherty's allegations in support of this claim are again sloppy. She fails to offer any explanation of *what* wages remain unpaid after termination. (Possibly, she means the unpaid overtime wages and meal-period/rest-break premium wages.) Apart from Daugherty's allegation that she worked at SolarCity's "Roseville California location as a sales specialist from approximately June 2015 to on or around October 2015," there are no allegations detailing the termination of her position with SolarCity. (The foregoing allegation equally supports the inference that she changed locations or positions in October 2015, and nothing in the complaint indicates she was terminated or that she quit.)

Most strikingly, however, Daugherty fails to allege that SolarCity in fact failed to pay any lingering wages to *her* after her (presumed) termination.

These failures are fatal to Daugherty's waiting-time penalties claim. Nevertheless, these deficiencies should be easy to cure, and this order allows Daugherty to seek leave to amend her waiting-time penalty claim to provide factual allegations showing which wages (if any) SolarCity failed to timely pay to Daugherty and showing that she was actually terminated or that she quit. This claim is **DISMISSED**.

### E. Other Derivative Claims.

SolarCity moves to dismiss Daugherty's claim under Section 17200 of the California Businesses and Professionals Code and under PAGA. Both claims are wholly derivative of the foregoing claims, and the only basis for SolarCity's motion is its expectation that its motion would otherwise be granted. Accordingly, SolarCity's motion is **DENIED** as to those claims.

### F. Class Allegations.

SolarCity moves to dismiss Daugherty's class allegations, arguing that she lacks standing to assert her individual claims. As stated, some of Daugherty's individual claims survive (and others may be revived with amendments). Whether or not she is an adequate or typical representative of the class is an issue to be resolved at the Rule 23 stage, although it will be hard to forget plaintiff's sloppiness in crafting her complaint, raising the question whether

14

she and her counsel are up to the job. SolarCity's motion to dismiss Daugherty's class allegations is **DENIED**.

### G. Declaratory Relief.

Daugherty seeks declaratory judgment that the arbitration agreement is unlawful and invalid under *Morris*. SolarCity moves to dismiss this claim, contending there is no federal jurisdiction. SolarCity's argument rests on the already-rejected assertion that Daugherty's FLSA claim (her only federal claim) fails. (This order need not address whether it is appropriate to exercise supplemental jurisdiction because Daugherty's federal claim survives.)

### CONCLUSION

For the reasons stated above, SolarCity's motion to compel arbitration or stay the action is **DENIED**. Its motion to dismiss is **GRANTED** as to Daugherty's meal-period, rest-break, and waiting-period claims, and otherwise **DENIED**.

By **FEBRUARY 9**, Daugherty may seek leave to amend the dismissed claims by a formal motion noticed on the regular 35-day calendar. Daugherty must plead her best case. Her motion should affirmatively demonstrate how the proposed second amended complaint corrects the deficiencies identified in this order, as well as any others raised in SolarCity's motion but not addressed herein. The motion should be accompanied by a redlined copy.

To be clear, SolarCity should raise any Rule 12 arguments in response to Daugherty's motion seeking leave to amend, but Daugherty's motion will not be an opportunity to seek reconsideration of this order.

**IT IS SO ORDERED.**

Dated: January 26, 2017.

WILLIAM ALSUP
UNITED STATES DISTRICT JUDGE